IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH R. CATHON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 05 C 3937 |
| | ) Senior Judge Paul E. Plunkett |
| JO ANNE BARNHART, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Through a Federal Rule of Civil Procedure 56 motion for summary judgment, Joseph R. Cathon ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 405(g). Cathon claims that the Administrative Law Judge's ("ALJ") decision to deny him benefits should be reversed because the ALJ erred in finding that Cathon's testimony was not "fully credible." The Commissioner has also filed a Rule 56 motion for summary judgment, arguing that substantial evidence in the record supports the ALJ's finding. For the following reasons, we deny Cathon's motion for summary judgment and grant the Commissioner's motion for summary judgment.

### Facts

Joseph Cathon is a thirty-two year old man with a high school education. He last regularly worked in a warehouse. Cathon claims to have been disabled since July 1, 2002, the "disability onset

date." Since that time, Cathon has attempted to perform two separate jobs, but claims he was unable to continue them due to his conditions and therefore is considered to have been last gainfully employed on July 1, 2002. The claimant has satisfactorily alleged conditions that are considered to be severe impairments and the social security office assessed Cathon's abilities and determined his residual functional capacity ("RFC"), or what Cathon is able to due in spite of his limitations. Cathon's RFC indicates that he is able to perform work that: (1) does not involve frequent lifting over ten pounds; (2) does not require him to use either hand to perform repetitive grasping or fine manipulation; (3) is simple and routine; and (4) is performed primarily alone or with very little contact with the general public. (Soc. Sec. Admin. Decision, No. 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 at 4, Aug. 27, 2004). The issue before us is simply whether the ALJ correctly decided that Cathon did have meaningful residual functional ability and skills despite his protestations to the contrary.

*Medical Evidence*

In March 1999, based on painful swelling of his hand and foot joints and a weakly positive rheumatoid factor, Cathon was diagnosed with rheumatoid arthritis. In March 2001, Cathon sought care from Dr. Hinkle, another rheumatologist, for his morning stiffness, insomnia, fatigue, and finger numbness. Dr. Hinkle reported that at that time there were no objective findings to support a diagnosis of rheumatoid arthritis. Dr. Hinkle suspected that a different condition, such as fibromyalgia, may be causing Cathon's discomfort and recommended Cathon continue conservative medication therapy in addition to his medication regime for hypertension and diabetes. Dr. Hinkle also prescribed physical therapy for Cathon's arthritis and bursitis. By May 2001, Dr. Hinkle's progress notes suggest physical therapy should be continued for the grinding and hip pain. In August

2001, Dr. Hinkle prescribed a course of physical therapy to treat claimant's lumbar muscle strain.

In January 2002, Dr. Hinkle concluded that despite Cathon's complaints of chronic pain and discomfort, he could not find any objective evidence of inflammatory arthritis. However, Dr. Hinkle did find evidence of carpal tunnel syndrome, right medial epicondylitis and left knee chondromalacia.. But his diagnosis was tempered by his finding that Cathon regularly walked three miles on the treadmill. In April 2003, Dr. Hinkle again reported that Cathon's laboratory results show there was a negative rheumatoid factor. Thus, there were no results to support a finding of rheumatoid arthritis, and there was no justification for Cathon to be taking any anti-rheumatoid medication. In May 2003, Cathon was treated in the emergency room because of chest pain and breathing problems. Tests were negative for any serious heart problems. Two months later in July 2003, Cathon received conservative treatment for osteoarthritis of the finger joints and knee. Dr. Hinkle did conclude that Cathon's response to treatment was poor and noted that Cathon had significant limitations with hand and finger manipulations.

Cathon was also regularly seen by Dr. Jeffrey Glass, whose treatment records indicate that Cathon had a history of diabetes, hypertension, and chronic bilateral elbow/knee, elbow/hip joint pain as well as a degenerative joint disease. Under Dr. Glass' care, Cathon was admitted to the hospital in June 2001 for severe abdominal pain, and the records indicate that Cathon was diagnosed with ulcers and irritable colon. In February 2002, Cathon's blood sugar was elevated and he was treated for Type II diabetes. In May 2003, Cathon was also treated for knee pain and in October 2003, he was diagnosed with degenerative joint disease of the knees.

Cathon was also examined by orthopedist, Dr. Scott Logue. In June 2002, Dr. Logue diagnosed Cathon with bilateral carpal tunnel syndrome and medial epicondylitis and recommended

conservative medication treatment. Shortly thereafter, in July 2002, Dr. Scott Metrick found very mild left carpal tunnel syndrome and degeneration of the knee in Cathon. In November 2002, in an attempt to find the root of Cathon's pain, Dr. Catherine Meyer ordered additional test and concluded that Cathon was negative for rheumatoid arthritis and that his blood sugar level was well controlled. Dr. Meyer found evidence of problems with Cathon's right knee, but found that his complaints of severe pain were unsupported by his physical condition. Thus, he recommended only conservative treatment.

Cathon's primary care physician, Dr. Daniel Lynch, reports that from December 2002 through May 2004 Cathon had a history of diabetes, ulcers, anxiety with panic attacks, left knee strain, and lower back pain. Dr. Lynch's notes indicate that in 1998 Cathon was diagnosed with non-insulin diabetes. Dr. Lynch's records also reveal that since December 2002 Cathon was being medically treated for depression, panic attacks, and obsessive-compulsive disorder. However, Dr. Lynch's notes indicate that claimant was fully oriented. In October 2003, Dr. Lynch's records show that claimant was diagnosed with scoliosis and was being treated for anxiety, depression, and panic disorder, and that he claimed he was unable to conduct himself in normal daily activities or hold a job. Cathon's counselor, Michael Klestinski, reported that Cathon had been undergoing therapy since May 2003 for anxiety, depression, and panic disorder and stated that Cathon regularly saw Klestinski to seek help for his panic attacks. In August 2003, Dr. Robert Baker, one of claimant's psychiatrists, reported that he had seen Cathon in 2003 for his panic attacks and depression. Dr. Baker noted that claimant's response to medication was poor. Cathon's other treating psychiatrist, Dr. Desesperara, remarked that in January 2004, prescribed medication therapy was helping.

Significantly, in none of Cathon's records did any of his treating physicians opine that he was unable to work at all.

*Cathon's Hearing Testimony*

At the hearing, Cathon testified that he experiences anxiety attacks and that because of his knee problems he was unable to retain his job with his former employer. Prior to that, Cathon had anxiety attacks and missed work because of his attacks. Despite the numerous therapies that Cathon has undergone, he still experiences daily panic attacks that last from five to forty minutes. At the time of his testimony, Cathon also complained of pain in his elbows, knees, and hips, bowel problems, and stated that he recently began an insulin regimen for his diabetes. He testified that because of either his mental or physical impairments, he was unable to perform any job.

Cathon testified that he is not able to do much at all each day; he said he has difficulty with everyday chores and that family members help him with child care and groceries. He stated he does not have the strength to lift his nine-month old child. Cathon also claims that he rarely goes out of his home and while he is at home, he unsuccessfully attempts to clean house. Later in his testimony, however, he stated that he was a "neat-freak" and because of his obsessive-compulsive disorder, he sometimes cleans the house all day, despite the discomfort that he experiences. His father also testified that Cathon continuously cleans at family gatherings. Cathon states he has trouble walking or even standing for over twenty minutes and he wakes up in the morning stiff and sore.

## *Vocational Expert's Hearing Testimony*

A vocational expert, Susan Entenburg, looked to claimant's educational and vocational profile, as well as his functional limitations to assess what type of work he was able to perform. Entenburg considered Cathon's previous jobs, which included assistant manager, service advisor, manager, assistant service director, security guard, stocker, video game clerk, cook, hydraulic cylinder repairman, and tire repairman, and concluded that based on Cathon's RFC, he could not perform any of his previous jobs.

## *The ALJ's Decision*

In a decision dated August 27, 2004, ALJ Cynthia M. Bretthauer determined that for the purposes of disability benefits, Cathon was not disabled. The ALJ found that although claimant's symptoms and complaints were not overall inconsistent with his residual functional capacity, his testimony lacked credibility. In reaching this conclusion, the ALJ weighed claimant's testimony with the physician records and found that the objective medical evidence does not establish that Cathon's limitations were greater than those determined by the social security office. Judge Bretthauer agreed that some of claimant's allegations of pain are supported and acknowledges that claimant's limitations are articulated by his RFC. However, Bretthauer noted that claimant's physical examinations have only provided moderate support for his overall impairments and his allegations of pain and limitations are grossly disproportionate to the medical findings. In fact, the ALJ stated that the clinical and laboratory findings do not establish that Cathon has abnormalities consistent with the totally debilitating symptoms from which he claims he suffers. The ALJ also noted that claimant has not received the type of medical treatment that would normally be required if he were,

in fact, totally disabled. Judge Bretthauer placed considerable weight on claimant's positive response to the medications and determined that this progress indicates that he is not totally disabled. The ALJ also considered that although claimant's work history after the onset date cannot be considered as steady employment, it is enough to establish that Cathon was able to perform more than he claims to have been able to do.

The ALJ placed significant weight on the non-examining physicians' conclusions that Cathon was "not disabled." (Exhibits 7F-9F.) The ALJ concedes that these non-examining physicians are not to be given complete deference; however, they support the conclusion that claimant's RFC, or documented limitations, are appropriate and should not be reduced or expanded. The ALJ concluded that claimant's problems and limitations are warranted to the extent that he can only perform certain jobs. They do not, however, support a finding that he cannot perform any job. The ALJ believed that although Cathon would not be able to perform his past work, there are light work positions that meet his requirements. Thus, the ALJ concluded that Cathon was not disabled.

## **The Legal Standard**

Our review of final decisions of the Commissioner (here, the ALJ) is deferential.[1] The Social Security Act establishes that findings as to any fact are conclusive if supported by substantial evidence and no error of law occurred. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (internal citation omitted). We do not reevaluate

---

[1] The ALJ's decision is the final decision of the Commissioner because the SSA Appeals Council denied Lemos's request for review of the ALJ's decision. (R. 2.) 20 C.F.R. § 404.981.

the facts, re-weigh the evidence or substitute our own judgment for that of the ALJ. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## **Discussion**

The SSA regulations provide for a five-step inquiry to determine whether a claimant is disabled. The following considerations must be made in reaching a determination: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the SSA; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy. *Knight*, 55 F.3d at 313. Where, as here, a claimant is able to show that he cannot perform his past work, the burden shifts to the SSA to establish that the claimant is capable of performing other work in the national economy. *See id.* Here, the ALJ found that Cathon satisfied steps one through four. However, in analyzing whether claimant could perform work that is available in our national economy, the ALJ determined that he was able to perform work and therefore, step five was not satisfied. The issue before us is whether the ALJ's decision was supported by substantial evidence.

Cathon's primary argument is that the ALJ erred in assessing the credibility of his testimony and in finding substantial evidence to support her ruling. An ALJ's credibility determination is accorded great deference; we will not reverse it unless a claimant can show it was "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, the ALJ's decision must go beyond a mere conclusory statement that a claimant's testimony was not credible. Social Security Ruling provides

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and the reasons for the weight. *Id.*

Social Security Ruling 96-7p (1996).

Such specificity is required in order to "give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision." *Id.* Even where a claimant testifies about symptoms not fully supported by the objective medical evidence, the ALJ must sufficiently weigh his testimony and must consider the claimant's daily activity, the duration, frequency, and intensity of pain, the precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication and any functional restrictions. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004).

In her decision, the ALJ acknowledges Cathon's symptoms and weighed them with the objective medical evidence. She considered claimant's assertions in his testimony, namely that he lives in a mobile home with his wife and two children; he drives once a week accompanied by someone else; he had an anxiety breakdown at work and that condition has worsened; he has discussed knee replacement surgery because physical therapy made his pain worse; he cannot walk very far because of his hip pain; he takes medication for his pain as well as for diabetes; he performs breathing exercise to manage his panic attacks; and attests that his therapist and medication are helping. (R. 18 at 7-8.)

In assessing his credibility, the ALJ states that evidence provides "at best, only moderate support" of claimant's alleged pain. She stated that the clinical and laboratory findings do not "reveal abnormalities consistent with the claimant's allegations of totally disabling symptoms . . .

in fact the record does not contain any opinions from treating or examining physicians indicating that the claimant has limitations greater than those determined [by his RFC] . . . ." Where the record as a whole supports the ALJ's finding, we need not overturn a decision that seemingly gives a Plaintiff's testimony short shrift. *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003); *Manney v. Barnhart*, 320 F. Supp. 2d 681, 697 n.29 (N.D. Ill. 2004). Here, the ALJ weighed Cathon's testimony against the objective medical evidence and although she found support for some of his limitations, she did not find sufficient evidence to indicate he was totally disabled.

As the analysis to determine whether Cathon was disabled requires, the ALJ next explored whether Cathon was able to perform any jobs. A vocational expert's testimony was considered and that expert, when presented with a hypothetical situation, stated that based on Cathon's age, education, work history, and RFC he would not be able to perform any of his past work. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (stating that when a vocational expert does not have the opportunity to review the medical records, the ALJ is required to present her with hypothetical situations that include all limitations supported by medical evidence in the record.). Once it is established that the claimant is not able to perform any previous work, the burden shifts to the Commissioner to establish that there are a significant amount of jobs in existence which the claimant could perform. *Knight*, 55 F.3d at 313.

Accordingly, the ALJ considered this expert's testimony Cathon's age, skills, RFC, and limitations and concluded that although claimant is not able to perform a full-range of jobs, there are

still jobs in our national economy which suit Cathon's abilities.[2] Thus, the ALJ determined that for the purpose of title II and title XVI of the Social Security Act, Cathon is not under a disability.

As stated, judicial review of an ALJ's findings must be made only as to whether those findings were based on substantial evidence from the entire record. 42 U.S.C. § 405(g) We have reviewed the record and find that there is sufficient objective medical evidence to support the ALJ's decision. Because the record as a whole is consistent with the ALJ's decision, we do not believe that the ALJ was "patently wrong" in finding Cathon as not disabled. Claimant's RFC indicate that he can perform a job so long as it meets his limitations and there are, in fact, such positions in our national economy. It is true that the claimant clearly suffers from a myriad of physical problems and some significantly limiting his potential gainful employment. But the ALJ, in our view, made a decision in accordance with both the law and the facts of the case, the objective findings and testimony of the doctors clearly gave the decision maker the right to discount or even disbelieve a significant part of Cathon's self serving testimony.

---

[2] Combined, there are 15,000 inspection and housekeeping jobs in the Chicago area that the ALJ determined Cathon could perform.

## Conclusion

We find that the Commissioner's decision that Cathon is not disabled is supported by substantial evidence. Accordingly, the Commissioner's motion for summary judgement is granted and Cathon's motion for summary judgment is denied. This is a final and appealable order.

ENTER:

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

DATED: MAY 17 2006